## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
## CIVIL CASE NO.

| | |
|---|---|
| **J. H.,** a minor, by and through his parent, next best friend, and guardian**, SABRINA HIGHTOWER,** | ) ) ) |
| *Plaintiff,* | ) ) |
| **v.** | ) ) |
| **VOLUSIA COUNTY SCHOOLS A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY A/K/A SCHOOL BOARD OF VOLUSIA COUNTY, a public school and Florida municipal and/or political subdivision, and MATTHEW CINDRIC in his individual capacity**. | ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) ) / |

---

### COMPLAINT WITH DEMAND FOR JURY TRIAL

---

**COMES NOW Plaintiff, J. H., a minor, by and through his parent, next best friend, and guardian, SABRINA HIGHTOWER,** ("Plaintiff" or "Ms. Hightower" or "J.H."), by and through their undersigned counsel, and files this *Complaint With Demand for Jury Trial* against **VOLUSIA COUNTY SCHOOLS A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY A/K/A SCHOOL**

1

BOARD OF VOLUSIA COUNTY, ("Volusia"), a public school  and Florida municipal and/or political subdivision,  and MATTHEW CINDRIC in his individual capacity, DEFENDANTS, (collectively "Defendants"), and so states:

## I.  NATURE OF THIS ACTION

This is an action for damages pursuant to 42 U.S.C. §1983, the Fourth Amendment, the Fourteenth Amendment, *Monell*, and Florida state law, for damages caused by Defendants, acting under color of law, to middle-school student J.H. in deprivation of his constitutional and state law rights, when Volusia's on-duty teacher and full grown adult Matthew Cindric unjustifiably and unlawfully used a chokehold on this kid who was being attacked by another student,  to the point of physically lifting J.H. off the ground in that chokehold and carrying J.H. across the school yard in that chokehold, while other students screamed and recorded that J.H. was "*about to pass out*," after a kid attacked J.H. at Volusia's school during school hours. Cindric only released J.H. from his chokehold after another educator arrived and forced him to do so.

## II.  JURISDICTION, VENUE, AND PARTIES

1.      Jurisdiction is properly invoked in this Court pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §1343(3) and (4), with 42 U.S.C. §1983 as the enabling statute, 42 U.S.C. §1983 and §1988, and the Fourth and Fourteenth Amendments to the

U.S. Constitution, wherein the claims herein arise under the U.S. Constitution and laws of the United States.

2.    Supplemental jurisdiction for state law claims is proper under 28 U.S.C. 1367(a), wherein the facts giving rise to these claims form part of the same case or controversy of in federal and state law. Plaintiff seeks damages exceeding the statutory minimum $75,000, exclusive of costs and interests.

3.    Venue is properly invoked under 28 U.S.C. § 1391(b) insofar that at all times material hereto, the events giving rise to this Complaint occurred at Defendant's public school/place of business in Volusia County, Florida, on a school day during its regular operating school hours wherein its students and staff were present on campus; Plaintiff and his mother reside in Volusia County, Florida; Matthew Cindric was employed by Volusia in its school system in Volusia County, Florida, and an adult over the age of 18 years working or residing in Volusia County, Florida; and, Volusia County, Florida, is physically located within this court's judicial district and division.

4.    Plaintiff, J.H., at all times material hereto, was an African-American minor/middle-school student under the age of 18 years attending Volusia. His mother, Sabrina Hightower, is his parent, next best friend, and legal guardian. They are both residents of Volusia County, Florida, and otherwise

*sui juris.*

5.      Defendant, **VOLUSIA COUNTY SCHOOLS A/K/A SCHOOL DISTRICT OF VOLUSIA COUNTY A/K/A SCHOOL BOARD OF VOLUSIA COUNTY, ("Volusia"),** a public school and Florida municipal and/or political subdivision**,** acting under color of law through its agents, representatives, employees, assigns, and/or school board including its superintendent, is located at 200 North Clara Avenue, DeLand FL 32720.  Its final decision maker and Superintendent Carmen Balgobin. Volusia operates as a public school and political subdivision subject to civil suit wherein it operates, controls, and supervises all public schools in its district, and is empowered to make and establish policies for its school system, pursuant to Article IX, §4(b), of the Florida Constitution, and F.S. §1001.32(2) and 1001.41(4), and is a person acting under color of state law pursuant to 42 U.S.C. §1983.

6.      Defendant, MATTHEW CINDRIC, at all times material hereto, was an on duty adult employee/teacher of Volusia acting under color of law, employed by Volusia at one of its middle schools in Volusia County Florda, that J.H. attended, and otherwise *sui juris.*

7.      This court has both subject matter and personal jurisdiction over the

parties.

8.  All conditions precedent to the filing of this federal lawsuit have been met, satisfied or waived by Defendant.

## II.

## GENERAL ALLEGATIONS

9.  Plaintiff renews and re-alleges paragraphs 1-8.

10.  At all times material hereto, Plaintiff, J.H., was an African-American minor, and member of a protected class based on his race.

11.  At all times material hereto, J.H. was a student at one of Volusia's middle schools in Volusia County, Florida

12.  At all times material hereto, Matthew Cindric was an on-duty employee of Volusia, working as a teacher at the same middle school which J.H. attended (Deland Middle School).

13.  On February 18, 2021, Cindric, while at work at Volusia's Deland Middle School and during school hours in which the middle school was open and students physically present on campus, approached a white kid and African-American J.H. wherein the white kid had physically attacked J.H. after J.H exited the bus.

14.  The white kid had threatened J.H. the day prior at school, and the next day

attacked J.H. at school pursuant to that threat.

15.    J.H. had informed a teacher of the kid's threat on the day prior.

16.    The teacher reported the student's threat both verbally and in writing via email to Volusia.

17.    Volusia was thereby on actual notice of the kid's planned attack on J.H. prior to the date of his attack on J.H. and had adequate time to intervene and stop the attack on J.H.

18.    J.H. thereby reasonably believed that Volusia had intervened to protect him from harm while on its campus.

19.    The next day J.H. rode the bus to school as per his usual routine.

20.    After he exited the bus, the white student immediately physically attacked him in Volusia's campus school yard, wherein J.H. was trying to defend himself from further harm.

21.    Other kids were physically present in that school yard.

22.    Cindric came up to the attack in the school yard where J.H. was actively engaged in defending himself. Cindric appeared to console the white student and did not ensure the attack was over, and J.H. hit the white student back who had attacked him.

23.    Cindric placed J.H. in a chokehold, physically lifting minor J.H. from the

ground in that chokehold.

24.     The other kids screamed at Cindric's actions, and at least one kid began recording on her cellphone Cindric's chokehold of J.H.

25.     While still holding J.H. in a chokehold with minor J.H.'s feet unable to touch the ground and J.H. struggling to breathe, Cindric walked across the school yard holding J.H. in that chokehold.

26.     J.H.'s eyes began to roll back in his head from Cindric's choke hold.

27.     One of the students who was watching and recording with her cell phone yelled out that J.H. was "*about to pass out*."

28.     Cindric still did not release J.H.

29.     Eventually, another adult male Volusia staff member came upon the scene of Cindric's choke hold and compelled Cindric to release J.H.

30.     At that time only, Cindric released J.H., from the chokehold.

31.     J.H. suffered difficulty breathing and had marks on his neck from Cindric's chokehold.  He almost passed out. His hand was injured. He had a busted lip. He had pain in his neck from Cindric's chokehold. Other students had to assist him into the school to see the school nurse due to his difficulty breathing from being choked by Cindric.

32.     J.H. was transported from the school to the hospital via ambulance.

33.   Despite being placed on notice of the planned attack on J.H. the prior day, Volusia had failed to prevent the attack or intervene to protect J.H.

34.   Volusia also failed and neglected to inform J.H.'s mother, Ms. Hightower, of the assault on J.H. by its on-duty adult employee Matthew Cindric.

35.   Volusia had also failed and neglected to inform Ms. Hightower that it had not taken any action to intervene or stop the known planned attack on J.H. by the student, of which it was of actual and adequate notice prior to the attack.

36.   Volusia possessed video footage of the attack of J.H., and the chokehold of J.H. by Cindric, due to cameras in that physical location at its school.

37.   Despite Ms. Hightower's multiple requests as parent and guardian of her minor son J.H., to see the footage of what occurred in the attack and assault of her minor son, Volusia refused to show her the footage, even any footage redacting the faces of the other children who were on campus watching the attack.

38.   Despite Ms. Hightower's multiple requests to talk with Volusia to see if it was investigating the incidents, Volusia informed Ms. Hightower that it was investigating, but refused to give her any updates on its investigation.

39.   Ms. Hightower reached out to community advocates for help to facilitate Volusia informing her of the details of its investigation and allowing her to

see its video footage.

40.    Volusia continued to refuse to provide details of its investigation, and to allow Ms. Hightower to see the footage.

41.    The cellphone video footage of another kid who had recorded Cindric choking J.H. eventually made its way to J.H. at school.

42.    During its investigation, Volusia had briefly placed Cindric on administrative leave.    Volusia then returned Cindric to work with no discipline.

43.    Volusia returned Cindric to the same school which J.H. attended, and where Cindric had choked J.H.

44.    Volusia refused to re-assign Cindric to another school despite the requests of Ms. Hightower, who also made Volusia aware of minor J.H.'s reasonable fear of being in the presence of Cindric at Volusia's school which J.H. attended and where Cindric worked.

45.    Volusia still refused to show Ms. Hightower its footage of the attacks.

46.    Eventually, Ms. Hightower had to retain counsel to file a civil action in state/circuit court to compel Volusia to release its video footage so that she could see what happened to her minor son, J.H.

47.    After Ms. Hightower filed that civil action, and only after, Volusia then

agreed to allow Ms. Hightower to see its footage of Cindric's chokehold on minor J.H.

48.    Volusia also agreed to release its investigative file of the attacks on J.H. by the student and Cindric on its campus during school hours.

49.    Its investigation showed that the white student admitted that he had threatened to attack J.H. the day prior, and physically attacked J.H at school after J.H. had exited the school bus.

50.    The investigation also evidenced that Cindric admitted choking J.H.

51.    Cindric did not see J.H. with any weapons nor did J.H. have any weapons. Cindric knew he'd not completely stopped the attack but then tried to place blame on J.H. who had been attacked and was the victim.

52.    Yet, Volusia did not discipline Cindric, and returned Cindric to work at the same school as J.H.

53.    Volusia knew its on-duty teacher had no right to choke minor kid J.H, nor to physically hold J.H. against his will wherein J.H. was the victim, but ratified Cindric's actions as its employee, and its own constitutional violations against J.H.,  as acceptable per its own custom, policies, pattern, and practice.

54.    Cindric knew professionally and personally that he had no right or justification to choke minor kid J.H, nor to physically confine J.H. against his

will.

55.     Prior to Cindric's choking of minor African-American J.H., civil rights advocates in Volusia had spoken about publicly against Volusia multiple times for its adverse discriminatory differences in how it treated its minority students, specifically those who are black and/or disabled, and has a custom, policy, pattern, and/or practice of doing so, even if those policies are unwritten.

56.     These advocates had spoken out at Volusia's public school board meetings in which its superintendent/CEO/final policy was present, and school board, and/or in separate meetings with Volusia.

57.     Volusia did not remediate nor cure its adverse different treatment of its African-American students in comparison to its similarly-situated white students.

58.     Defendants have caused Plaintiff substantial and ongoing damages.

## III.
## FEDERAL CLAIMS
## COUNT I – FOURTH AMENDMENT/42 U.S.C. §1983:  EXCESSIVE FORCE
## DEFENDANT CINDRIC

59.     Plaintiff incorporates and re-alleges paragraphs 1-58  herein.

60.     Cindric is being sued in his individual capacity.

61.     J.H. did not use force against Volusia's on-duty employee/teacher Cindric in Cindric's attack of J.H. on Volusia's campus during school hours, and was admittedly the victim physically attacked by the other student,  so Cindric had no legal right to use force against J.H., and definitely no right to choke J.H.

62.     Even if Cindric absurdly alleged that he was breaking up the attack on J.H. by choking J.H., J.H. was the admitted victim in the attack by the other student, and the evidence clearly shows that Cindric lifted J.H. off the ground in the chokehold and continued his chokehold of J.H. carrying J.H. across the court yard in that same physical chokehold, while students were screaming that J.H. was about to pass out and J.H. was struggling to breathe and escape Cindric's muscular iron-clad arm around J.H.'s neck.  No fight or attack was in progress, and J.H. was struggling to breathe due to Cindric's chokehold.

63.     J.H. nor his mother consented to Cindric's choking/chokehold or physical force against J.H.; the force used by Cindric against J.H. was against the will of J.H. and his mother; Cindric's use of force was unreasonable; and Cindric's physical force was overwhelmingly disproportionate to any level of force which could even be credibly alleged or argued as necessary.

64.     Volusia's school board including its superintendent was informed and on

notice of Ms. Hightower's repeat requests to view the video of Cindric's attack on J.H., be involved in and receive updates in Volusia's investigation of both attacks, and requests not to return Cindric to that same school, but repeatedly withheld the video and investigation, refused to involve and update Ms. Hightower, approved the return of Cindric to that same school as where he attacked J.H., and approved its lack of disciplining Cindric for his excessive force against J.H.

65.    Cindric is individually liable for his unlawful excessive force against minor student J.H., acting under color of law, on Volusia's campus during school hours, which caused damages to J.H., wherein Cindric had not legal right to choke or use force against J.H.

66.    Cindric caused Plaintiff substantial immediate and ongoing damages to include physical pain in his neck, choke marks on his neck, physical pain, medical costs, injured hand, public humiliation, public embarrassment, fear, anxiety, depression, anger, mental harm, emotional distress, financial harm, hospital transport, costs, and attorneys fees.

67.    Wherefore, Defendant Cindric committed excessive force against Plaintiff in deprivation of his Fourth Amendment rights to be from excessive force, caused damages to Plaintiff, and Plaintiff seeks unspecified damages and

punitive damages against Defendant Cindric, to also include attorney's fees

and costs.

## COUNT II – FOURTH AMENDMENT/42 U.S.C. §1983: FALSE IMPRISONMENT/UNLAWFUL DETENTION DEFENDANT CINDRIC

68.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

69.    Defendant Cindric is being sued in his individual capacity.

70.    At all times material hereto, Cindric, an on-duty employee/teacher of

Volusia acting under color of law, physically held and confined in a

chokehold Plaintiff J.H., against the will of J.H. or his mother, without consent

of J.H. or his mother, and without legal cause or right, wherein J.H. was not

physically able to release himself, and wherein as a result Cindric caused

physical, emotional, financial, and mental damages to J.H.

71.    Cindric was working as a teacher for Volusia at all times material hereto

,and was not a law enforcement officer responding to a scene. J.H. was the

victim of the attack between the students.

72.    Cindric had no right to physically confine and choke J.H.

73.    Cindric as an adult male knew that his chokehold of a minor kid middle

school student J.H., lifting J.H. off the ground, as well as carrying J.H. across

the schoolyard in that same chokehold gasping and struggling for air to the

point where other students shouted out that J.H. was about to pass out, was highly likely and foreseeable to cause harm to J.H., and did harm J.H.

74.    As a result, Defendant Cindric caused substantial immediate and ongoing harm and damages to Plaintiff,  to include physical pain, physical pain at his neck, choke marks on his neck, medical costs, injured hand, difficulty breathing, public humiliation, public embarrassment, fear, anxiety, depression, anger, mental harm, financial harm, attorneys fees, costs, and emotional distress.

75.    Wherefore, Defendant Cindric violated Plaintiff J.H.'s right to be free from unlawful detention and false imprisonment in deprivation of his Fourth Amendment rights, caused damages to Plaintiff, and Plaintiff seeks unspecified damages against Defendant Cindric to also include punitive damages, attorney's fees, and costs

## COUNT III - FOURTEENTH AMENDMENT: EQUAL PROTECTION DEFENDANT VOLUSIA

76.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

77.    The Fourteenth Amendment prohibits any state from denying any person within its jurisdiction equal protection of the laws.

78.    Discrimination based on race is unconstitutional under the Equal Protection clause of the Fourteenth Amendment.

79.    Plaintiff J.H. is a U.S. citizen and member of a protected class based on his African-American race, with constitutionally protected right to equal protection under the law.

80.    Defendant Volusia is a government municipality and/or political subdivision, and person acting under color of state law for purposes of 42 U.S.C. §1983.

81.    Defendant is the final policy maker and enforcer for all schools within its district.

82.    Plaintiff was at all times material hereto an African-American student attending Defendant Volusia's public school, who was physically attacked at Volusia's public school during school hours by a white student, and Volusia's white on-duty employee/teacher Matthew Cindric.

83.    Volusia was at all times material hereto, and still is, subject to the constitution and laws of this country guaranteeing equal protection and against racial discrimination.

84.    At all times material hereto, Volusia applied the laws of this land to be free from racial discrimination and receive the same treatment under the law as those non-protected similarly situated, differently toward Plaintiff to his

detriment than to its white student and employee to their benefit, who both admitted physically unlawfully attacked African-American student J.H.

85.    For example, despite being on actual notice that its white student was going to physically attack its African-American student J.H. with adequate time to prevent harm to J.H., Volusia failed to intervene or make any attempt to intervene to fulfill its duty to protect J.H. from harm and J.H. did suffer physical, emotional, mental, and financial harm as a result.

86.    In another example, Volusia allowed its white employee Cindric to be involved in its investigation of his attack on J.H., with updates and give two separate statements, and its white student who attacked J.H. to be involved in the investigation.

87.    However, Volusia refused to give Ms. Hightower updates or allow her to see its video of Cindric's attack on her son.

88.    Volusia treated J.H. and his mother as if J.H. was not the victim, and Cindric admitted that he did not know who started the attack nor did he attempt at any time to find out who started the attack while continuing throughout the investigation to place all the blame on the black kid J.H., whom he also choked until another educator had to make him release J.H.

89. In another example, Volusia refused to discipline its white teacher Cindric for his excessive force to include his admitted choking of African-American student J.H., outright evidencing its protection of its white employees who physically attack its African-American students.

90. Volusia has a known public reputation for disproportionately punishing its African-American students for the same alleged infractions to which it does not punish its white students or punishes them to much lesser degree for the same alleged infractions.

91. At the time of the attack, Volusia's superintendent was Mr. Fritz, who is white. His successor, Carmen Balgobin is white and visibly appears as white.

92. Cindric is white and visibly appears as a white male.

93. The student who attacked J.H. is white.

94. Defendant's repeat and intentional favorable application of discipline to its white students and employees to their benefit in the terms and conditions of their school attendance or employment, while repeatedly and intentionally unlawfully treating its black students, and here specifically J.H., adversely different in the terms and conditions herein wherein he was attacked twice by Volusia's white student and teacher with no discipline of them but

disciplining of J.H., violate his right to equal protection under the 14th Amendment.

95.    Plaintiff's race was the motivating factor in Volusia's decision making.

96.    Defendant knowingly and intentionally did not equally apply nor afford equal or the same application of the laws in the terms and conditions of its school and disciplining of its African-American students, to include J.H.

97.    Defendants refused to cease or cause to cease or remediate its unlawful equal protection violations despite multiple opportunities to do so.

98.    As a result, Defendant Volusia caused substantial immediate and ongoing harm and damages to Plaintiff,  to unlawful discipline, physical pain, physical pain at his neck, choke marks on his neck, medical costs, broken finger, public humiliation, public embarrassment, fear, anxiety, depression, anger, mental harm, financial harm, attorneys fees, costs, and emotional distress.

99.    Wherefore, Defendant Volusia violated Plaintiff J.H.'s right to equal protection in deprivation of his Fourteenth Amendment rights, caused damages to Plaintiff, and Plaintiff seeks unspecified damages against Defendants to include attorney's fees and costs.

## COUNT IV: MONELL
## DEFENDANT VOLUSIA

100.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

101.   This claim is brought pursuant to 42 U.S.C. §1983 for violations of the Fourth and Fourteenth Amendments.

102.   At all times material hereto, Plaintiff J.H. had a clearly established constitutional right to be free from excessive force, false imprisonment, and violations of his equal protection and due process rights, and Volusia was on notice of those clearly established constitutional rights.

103.   Defendant Volusia was, at all times material hereto, the employer of Cindric, and final policy and decision-maker for Volusia.  Defendant Volusia is a person within the meaning of §1983.

104.   Defendant Volusia was, at all times herein, responsible for the policies, procedures, customs and/or practices implemented and utilized, including the supervision, training, discipline, retention, conduct and control over its employees, including Defendant Cindric.

105.   At all times material hereto, Volusia, through its final policymakers in charge of its employees and students, engaged as a matter of policy, practice or custom in inadequate training, excessive force, violation of due process rights of its students, and violation of the equal protection of its students., and negligent retention of its employees with reckless disregard and deliberate

indifference to the rights of its students with whom its employees come into contact, including and specifically, J.H.

106.   Volusia  was deliberately indifferent to the need for better training and supervision, and it was highly predictable that its employees engaged and/or would engage in excessive force, false imprisonment, and that it engaged or would engage in dur process and equal protection violations based on its history, and these violations continue to date because even after Cindric's choking  of minor student J.H., Volusia continues to receive claims of choking and/or physical harm by its employees from its minority students, as it did to Plaintiff herein.

107.   Municipalities or local government can be held liable under U.S.C. §1983 for constitutional violations caused by its custom, policy, or an action taken by an official with final policy-making authority. Volusia is a person for purposes of §1983 claims. Municipal entities such as schools can sued for constitutional deprivations pursuant to governmental 'custom' even if that custom has not been formally approval through its official decision-making channels[1]

---

[1]*Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir. 1994;  *Monell v. Department of Social Services*, 436 U.S. 658 (1978); Id. at  690–91

108.   Volusia's customs, patterns, practices, and/or written or unwritten polices ("customs") all the way up to its final decision-maker caused, facilitated, and ratified its deprivations of J.H.'s constitutional rights under color of law, under the Fourth and Fourteenth Amendments.  In other words, it is known by its staff that constitutional violations of its minority students are the Volusia way.

109.   For example, as reported by community advocates who fought for racial equality at Volusia, Volusia's racially motivated adverse treatment of its African-American students included more severe or frequent discipline of its African-American students for the same alleged infractions by its non-black students.

110.   In 2019, Volusia was placed on a public multi-year DOJ settlement for its vast and repeat intentional and unlawful punitive punishment and violations of the rights of its disabled students.

111.   No heightened pleading standard applies to Volusia's liability to J.H. for its customs violating his constitutional rights and causing him damages as a result as plead herein.[2]

---

[2] *Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)Federal court may not apply "heightened pleading standard" to §1983 claims alleging local gov. liability

112.    Specifically, Volusia's customs, acting under color of law, infringed J.H.'s right to be free from violation of his equal protection right to be free from racial discrimination,  and free from violations of his due process rights, under the Fourteenth Amendment, and excessive force and false imprisonment under the Fourth Amendment, as well as to be free from harm at school nor deliberately indifferent toward its duty to ensure the harm, and deprived him of his rights, privileges, and immunities under the laws and Constitution of the United States.

113.    As a direct and proximate result of Defendant's actions, and omissions, the Plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws of the State of Florida and sustained significant, cognizable and permanent injuries.

114.    At all times material to this action, Defendant had policies, customs, practices and/or procedures that were the direct and proximate cause of the unconstitutional unlawful excessive force, seizure and detention, racial discrimination, and due process violations, against Plaintiff, which include but are not limited to:

     a.      Permitting its employees to make unlawful and illegal physical

contact and detention with students to include choking, restraining, or confining students   against their will and without consent or notification to the parents, at the absolute discretion of the employee without Volusia putting in place customs and practices to prevent unlawfulness and timely reviewing complaints made it to by parents and students of such unlawful physical contact or confinement by its employees against the citizenry, and did unlawfully make physical contact through choking J.H., and unlawfully physically confined J.H. against his will and without the consent of J.H. or his mother. Defendant has a history of and a policy, practice or custom, either written or unwritten, permitting its employees to illegally and unlawfully seize, detain, confine and/or use excessive force against its students in violation of the Fourth Amendment.

b.    Permitting its employees to violate the due process rights of its students by refusing to involve its students and/or their parents in educational decision-making involving the student, to include discipline and attacks on the student resulting in harm to the student. Volusia also refuses to hear appeals of its students of major decisions affecting the student's education, and of complaints against adverse

actions taken by its employees against students. For instance, although Volusia has a written appeals policy for students in its policy manual which allows students to appeal discipline all the way up to its Superintendent who is its final decision-maker on that discipline, Volusia's Superintendent Carmen Balgobin frequently refuses to hear or schedule the written appeals of adverse discipline submitted to her to include suspensions or even respond to follow-up requests that she hear the appeal. Its Administrators and teachers frequently fail to follow its policies to involve parents or students in its decision making and investigations, just as it did to J.H. and his mother as plead herein. In fact, Volusia required J.H.'s mother to take it to Court before it would even comply with informing her of the investigation or answering update questions about its investigations of two attacks at its school on her own son. Volusia's due process violations results in unlawful increased discipline, harm to students who are not protected, preclusion of the rights of students and parents, and unlawful punitive discipline, such as evidenced by the DOJ's settlement against it and subsequent class-action lawsuit against it by those disabled students and the citizenry, and Volusia did unlawfully preclude J.H. and his

mother from investigation into the attacks on J.H. at Volusia, and complaining to Volusia about the threats and attacks, to the point of causing J.H. harm. Defendant has a history of and a policy, practice or custom, either written or unwritten, permitting its employees and of itself infringing the due process rights of its students and J.H. in violation of the Fourteenth Amendment.

c.    Permitting its employees and itself to forego ensuring the same protections of the law for its African-American students as it provides to its similarly-situated non-protected non-African American students and staff,  by refusing to discipline its non-African-American students and staff or discipline them to the same degree for the same alleged infractions as it does its African-American students and citizenry, and specifically to J.H. as plead herein.  Volusia's equal protection process result in unlawful increased discipline,  harm to students who are not protected, preclusion of the rights of students and parents, and unlawful punitive discipline, physical attacks on students and retaining the employment of those white teachers who violate the rights of its African-American students where race is the motivating factor. Defendant has a history of and a policy, practice or custom, either

written or unwritten, permitting its employees and of itself infringing the equal protection rights of its students and J.H. in violation of the Fourteenth Amendment.

115.   Defendant has failed and has a history of failing to prevent the conduct which befell Plaintiff, in that there are past and current complaints from other students regarding choking and false imprisonment of its minority students by Volusia's teachers beyond Cindric, and it has failed to take reasonable measures to provide its employees with adequate training in the proper, valid, and constitutionally mandated procedures and protocols in the application of detention/confinement, physical contact or force, due process, equal protection, parental notification, complaints, and ensuring that its final decision maker/superintendent enforces its polices, procedures, and constitutional protections of the citizenry and students, and here specifically, J.H.

116.   Volusia has, with deliberate indifference, adopted, implemented and/or executed the above policies and/or practices and/or procedures and/or customs which were directly responsible for deprivation of the constitutionally protected rights of J.H.

117.   In doing so, Volusia misused the power possessed by virtue of state law

and made possible only because Defendant was clothed/cloaked with the authority of state law.

118.    Volusia's intentional concealment of Cindric's on-duty attack on this minor child J.H. on its school campus during school hours wherein its students and staff were present, evidenced its approval and ratification of its employee's excessive force against J.H., by repeatedly hiding, withholding, refusing, J.H.'s mother and legal guardian to be involved in and see its investigation of both attacks of J.H. and its video footage in its possession of Cindric's chokehold of J.H.

119.    Volusia already knew and was on notice that its white student had planned the attack on African-American student J.H; that it had a well-documented history of adversely and wrongfully disciplining its African-American students in favor of its white students; and that its teachers had a history of physically using excessive force against its African-American students.    It was foreseeable to Volusia that Cindric's excessive use of force against J.H. would occur, and Volusia did nothing to intervene or stop these attacks despite being on notice and having adequate time to prevent these attacks on J.H.

120.    Volusia further solidified its own custom and violations of J.H.'s

constitutional right to be free from excessive force when it failed to remediate or cure Cindric's unlawful force, but instead cleared Cindric of any wrongdoing against J.H., and returning him to the same school as J.H. despite having the student's admission that the student attacked J.H.; Cindric's admission that he choked J.H.; video of Cindric's choking of J.H.; Ms. Hightower's request for Cindric not to be returned to the same school as J.H. and then not to be allowed any interaction with J.H. after Volusia refused to honor her request to assign Cindric to a different school; the fact that Cindric had failed to even put forth any attempt at investigating the situation to ascertain what occurred  before choking J.H. across the school yard after consoling the white attacker.

121.   Volusia's school board and superintendent are its policy makers and enforces, employee supervisors who hire its employees, and final decision-makers regarding its policies, customs, patterns, practices, personnel actions, and training of its employees.  It was already on notice of its employee's use of excessive force against its African-American students.

122.   Volusia is vicariously liable for the excessive force of its on-duty employee acting under color of law, against its minor student J.H. on Volusia's campus during school hours, and of which caused damages to J.H., wherein its

employee had no legal right to use a chokehold on J.H. and caused damages
to J.H.

123.    As a direct and proximate result of the actions and inactions of Defendant,
alleged herein, J.H.'s constitutional rights were violated by Volusia and its
employees and/or agents, *inter alia,* through actions and inactions that
culminated in permanent injuries and damages to J.H.

124.    At all times material hereto, Volusia was on actual or constructive notice
and/or should have known that its employees were committing excessive
force, false imprisonment, due process violations, and equal protection
violations, in deprivation of the clearly established constitutional Fourth and
Fourteenth Amendment rights of the citizenry and students it engaged or
placed into its custody and/or control, and here individually and specifically,
Plaintiff J.H.

125.    Yet, Volusia's final decision-makers including its superintendent to date,
took no substantial steps to cause these deprivations to cease, but instead
chose to turn a blind eye in total disregard to the deprivations by its
employees and the impact of those deprivations on the citizenry and here
specifically and individually, J.H.

126.    . As a direct and proximate result of Volusia's deliberate indifference,

failure to train, failure to supervise/negligent supervision, and negligent

retention, and violation of his Fourth and Fourteenth Amendment rights,

Plaintiff J.H.  suffered immediate and continuing  pain from physical choking,

physical marks on his neck from being choked, physical pain,  false

imprisonment, public humiliation, public embarrassment, broken finger,

financial costs, emotional distress, mental pain and suffering, costs, and

attorney's fees.

**STATE CLAIMS**
**COUNT V – RESPONDEAT SUPERIOR**
**DEFENDANT VOLUSIA**

127.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

128.    Volusia is liable for the wrongful and/or negligent acts of its employees

working within their scope of employment.

129.    At all times material hereto, Cindric was an on-duty teacher of Volusia

working within the course and scope of his employment, acting under color

of law, physically working at Volusia's middle school where J.H. was

attending, during regular school day and school hours wherein other staff

and students were physically on campus.

130.    At all times material hereto, Defendant Cindric was an on-duty

employee/teacher employed by Defendant Volusia and working within the

course and scope of his employment when committing the acts of excessive force, false imprisonment, equal protection violations, assault, battery, negligence, and all other claims asserted herein by Plaintiff.

131.    Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, J.H.  alleges that Defendant Cindric did not commit the excessive force, false imprisonment, equal protection violations, assault, battery, negligence, and all other claims asserted herein by Plaintiff herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

132.    Defendant Volusia is therefore liable for compensatory damages, attorneys' fees and costs despite any statutory limitation it may attempt to assert excluding its liability based on arguments that its employee Defendant Cindric acted outside his scope of employment.

## COUNT VI – BATTERY
## DEFENDANT CINDRIC

133.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

134.    Cindric is being sued in his individual capacity.

135.    Without lawful authority or justification, or the consent of J.H. or his mother, Defendant Cindric choked and held in a chokehold lifting minor student J.H. off the ground, minor student J.H. whish directly resulted in

physical harm of J.H.

136.   At no time did J.H. or his mother consent to Cindric's grabbing and choking of J.H.

137.   Cindric's choking of J.H. was nonconsensual, more than incidental, unnecessary, intentional, not pursuant to an arrest, not is self-defense, and unlawful.

138.   Cindric is a grown man and knew or should have known that putting a child in a chokehold would harm the child, especially a chokehold so severe and tight that he lifted the child from the ground by virtue of that chokehold, and refused to release the child while carrying the child across the schoolyard still in that chokehold, until another adult male employee had to come on the scene and make him release the child.

139.   Even the other kids knew and warned Cindric of the obvious foreseeable harm, shouting out to Cindric that J.H. was about to pass out from the chokehold.

140.   As a direct and proximate cause of Cindric's battery against J.H., J.H. suffered immediate and ongoing severe pain in his neck, choke marks on his neck, fear of passing out, physical pain, and suffered and continues to suffer severe fear, physical pain, public humiliation, public embarrassment,

emotional distress, mental pain and anguish, medical costs, financial damages, depression, anxiety, strained interpersonal relationships, fear at school, fear of retaliation, chilling of reporting incidents, attorneys fees, and costs.

141.   Plaintiff also seeks punitive damages against Cindric.

## COUNT VII – ASSAULT
## DEFENDANT CINDRIC

142.   Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

143.   Cindric is being sued in his individual capacity.

144.   Defendant Cindric made J.H. reasonably fear for J.H.'s life and safety when Cindric placed J.H. in a chokehold until J.H. was about to pass out.

145.   Cindric is full grown man actually carrying out a chokehold on a child.

146.   It was reasonable for minor middle-school student J.H. to believe that Cindric could kill or seriously harm him in that chokehold.

147.   Cindric was not joking nor playing around with J.H., and J.H. had not been joking nor horseplaying with Cindric, nor had J.H. consented for Cindric to touch him or place J.H. in a chokehold.

148.   J.H. was completely defenseless against this grown man, Cindric. And J.H. was placed in apprehension of a non-consensual contact or chokehold or battery.

149.    As a direct and proximate cause of Cindric's assault against J.H., J.H. suffered  immediate and ongoing severe pain in his neck, choke marks on his neck, fear of passing out, physical pain, and suffered and continues to suffer physical pain, public humiliation, public embarrassment, emotional distress, mental pain and anguish, medical costs, financial damages, depression, anxiety, strained interpersonal relationships, fear at school, fear of retaliation, chilling of reporting incidents, attorneys fees, and costs.

150.    Plaintiff also seeks punitive damages against Cindric.

## COUNT VIII – NEGLIGENCE: FAILURE TO PROTECT DEFENDANT VOLUSIA

151.    Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

152.    At all times material hereto, Volusia as a public school had a duty to protect J.H. from harm.

153.    Volusia at all times material hereto was on actual notice of the forthcoming attack on J.H. at least a day prior to the attack but failed to intervene or stop the known threatened attack on J.H. the following day.

154.    Because of and but for Volusia's breach of its duty, the student was able to carry out his planned attack on J.H. the following day, and cause physical harm to J.H.

155.     Volusia's teacher Cindric was able to place J.H. in a chokehold carry J.H.

in that chokehold across the schoolyard despite other students yelling that J.H. was about to pass out and J.H. struggling to breathe.

156.    Volusia failed to stop the physical attack on J.H. by its other student although timely notice of the attack wherein it could and should have stopped the attack.

157.    Volusia had a duty to protect minor student J.H.

158.    Volusia failed and breached its duty to protect J.H. from physical harm by the student or its teacher, when, despite being placed on actual notice by J.H. and one of its educators that a student had threatened to attack J.H. the next day, Volusia failed to intervene or tack action to stop or prevent that harm, and J.H. suffered physical, emotional, mental, and financial, harm, when he was physically attacked by that student as threatened, and Volusia's own on-duty teacher.

159.    It was foreseeable to Volusia that J.H. would suffer physical harm if Volusia did not intervene.

160.    It was foreseeable to Volusia that J.H. would suffer from seeing it place Cindric right back in the same school as J.H. in a position of authority to again act under color of law against J.H. and reasonably make J.H. feel unsafe when exercising his right to attend Volusia's public school.

161.   Cindric did see subsequently see J.H. at Volusia and make different facial gestures and remarks that scared and made J.H. reasonably uncomfortable, to the point wherein Volusia had to be threatened with a restraining order being filed against Cindric if he came into any contact or close range within J.H. again.

162.   As the sole, direct, and proximate cause of Volusia's breach of its duty to protect J.H. and negligence, J.H. was physically attacked at Volusia during school hours by not only the student, but Volusia's own teacher Cindric, and suffered immediate and ongoing damages of physical attack, injured hand, difficulty breathing, physical pain at his neck, choke marks on his neck, medical costs, ambulance transport to the hospital, public humiliation, public embarrassment, fear, anxiety, depression, anger, mental harm, financial harm, attorneys fees, costs, and emotional distress.

163.   Wherefore, Defendant Volusia's negligence  caused damages to Plaintiff, and Plaintiff seeks unspecified damages against Defendant to include attorney's fees and costs.

## COUNT IX – NEGLIGENT RETENTION
## DEFENDANT VOLUSIA

164.   Plaintiff incorporates and re-alleges paragraphs 1-58 herein.

165.   At all times material hereto, Volusia as a public school had a duty to

protect its students from harm, and held the absolute authority to discipline

Cindric, and to terminate Cindric's employment with Volusia.

166.    Volusia continued Cindric's employment although Cindric, an adult,

admitted to Volusia that he choked J.H., who was a minor in middle school.

167.    Volusia did not discipline Cindric.

168.    Volusia had a duty to protect minor student J.H.

169.    Volusia instead returned Cindric right back to the same middle school

where he'd choked J.H., and was J.H. was still in attendance.

170.    It was foreseeable to Volusia that J.H. would suffer physical harm if

Volusia did not intervene.  It was foreseeable to Volusia that J.H. would suffer

from seeing it clear Cindric of wrongdoing and then place Cindric right back

in the same school as J.H. in a position of authority to again act under color of

law against J.H. and reasonably make J.H. feel unsafe when exercising his

right to attend Volusia's public school.

171.    Cindric did see subsequently see J.H. at Volusia and make different facial

gestures and remarks that scared and made J.H. reasonably uncomfortable, to

the point wherein Volusia had to be threatened with a restraining order being

filed against Cindric if he came into any contact or close range within J.H.

again. This was evidence of continued  harassment of J.H. by Cindric which

further justified Cindric termination.

172.    Volusia had a duty to not retain teachers who physically attacked students and has a history of retaining teachers who choke and/or physically attack its students.

173.    As the sole, direct, and proximate cause of Volusia's negligent retention of Cindric to include placing Cindric back in the same school as J.H. despite Ms. Hightower's request for Cindric to be re-assigned elsewhere since Volusia refused to terminate Cindric, J.H. suffered immediate and ongoing damages of anxiety, fear, fear of retaliation, fear of future attacks, public humiliation, public embarrassment, depression, anger, mental anguish, strained interpersonal relationships, reduced school performance, headaches, tension, pain, financial harm, attorneys fees, costs, and emotional distress.

174.    Wherefore, Defendant Volusia's negligence  retention caused damages to Plaintiff, and Plaintiff seeks unspecified damages against Defendant to include attorney's fees and costs

175.    **IX.  <u>ATTORNEYS FEES</u>**

176.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

<u>**VI.**</u>
<u>**PRAYER FOR RELIEF AND DAMAGES**</u>

**WHEREFORE**, ALL PREMISES CONSIDERED, Plaintiff requests this Honorable Court:

A. Enter judgment in Plaintiff's favor and against Defendants for all damages requested herein, including attorneys' fees under 42 U.S.C. §1988, and such other relief that this Court deems just and proper under the law.

D.  Plaintiff further prays for all other lawful relief, both legal and equitable, to which Plaintiff is justly entitled.

## VII.
## JURY DEMAND

Plaintiff respectfully requests a jury trial in this matter on all claims.

Respectfully Submitted this **17th day of February 2025**

By: /s/ Rawsi Williams
Rawsi Williams, Esq. R.N.
State Bar No. 103201
RAWSI WILLIAMS LAW GROUP
701 Brickell Ave., STE 1550
Miami FL  33131
TEL:  888-RawsiLaw/888-729-7452
Email:rawsi@rawsi.com;
Ajoseph2@rawsi.com;
service@rawsi.com
Lead Attorney for Plaintiff

/s/ Frank T. Allen
Florida Bar No. 0033464

40

Frank Allen, Esquire
2582 Maguire Rd.
Ocoee, Florida 34761
Telephone: (407) 481-8103
Email: Allen551@aol.com
Attorney for Plaintiff